FILED
2011 Sep-06  AM 10:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

CONNIE WALDEN,                    ]
                                  ]
        Plaintiff,                ]
                                  ]
    vs.                           ]     4:10-CV-1166-LSC
                                  ]
MICHAEL J. ASTRUE,                ]
Commissioner,                     ]
Social Security Administration,   ]
                                  ]
        Defendant.                ]

MEMORANDUM OF OPINION

I.    Introduction.

The plaintiff, Connie Walden, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability and disability insurance benefits ("DIB"). Ms. Walden timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Walden was forty-eight years old at the time of the Administrative Law Judge's ("ALJ's") decision, she has at least a high school education, and

she is able to communicate in English.  (Tr. at 19.)  Her past work experiences includes employment as a retail manager.  (*Id.*)  Ms. Walden claims that she became disabled on March 5, 2008, due to a heart condition, hypertension, and chest heaviness.  (Tr. at 12-13.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  If he or she is, the claimant is not disabled, and the evaluation stops.  *Id.*  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. § 404.1520(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id.*  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. § 404.1520(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's

impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.   20 C.F.R. § 404.1520(a)(4)(iii).   If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made, and the analysis proceeds to the fourth step.  20 C.F.R. § 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled, and the evaluation stops.  *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.   20 C.F.R. § 404.1520(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Walden meets the nondisability requirements for a period of disability and

DIB and was insured through the date of his decision.  (Tr. at 12.)  He further determined that Ms. Walden has not engaged in substantial gainful activity since the alleged onset of her disability.  (*Id*.)  According to the ALJ, Plaintiff's pulmonary hypertension, left bundle branch blockage, and left upper extremity neuropathy are considered "severe" based on the requirements set forth in the regulations.  (*Id*.)  However, he found that these impairments neither meet nor medically equal any of the listed impairments in Subpart P, Appendix 1, Regulations No. 4.  (Tr. at 16.)  The ALJ did not find Ms. Walden's complaints to be totally credible, and he determined that she has the following residual functional capacity: sedentary work limited to only "occasionally lift and/or carry up to 20 pounds, frequently lift and/or carry up to 10 pounds, stand and/or walk at least two hours in an eight hour workday, sit for about six hours in an eight hour workday, and perform unlimited pushing and pulling."  (*Id*.)

According to the ALJ, Ms. Walden is unable to perform any of her past relevant work, she is a "younger individual," and she has at "least a high school education and is able to communicate in English" as those terms are defined by the regulations.  (Tr. at 19.)  The ALJ found that Ms. Walden has

the residual functional capacity to perform a significant range of sedentary work. (*Id*.) Even though Plaintiff cannot perform the full range of sedentary work, the ALJ used Medical-Vocation Rule 201.25 as a guideline for finding that there are a significant number of jobs in the national economy that she is capable of performing, such as telephone information clerk, surveillance system monitor, and assembler. (Tr. at 20.) The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." (*Id*.)

## II.    Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   The Court may not decide facts, weigh

evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion.

Plaintiff alleges that the ALJ's decision should be reversed or remanded for four reasons.  First, Ms. Walden claims the ALJ improperly gave little weight to Dr. Sangmin Lee, one of her treating physicians.  (Doc. 5.)   Second, Ms. Walden contends the ALJ erred in discrediting her subjective complaints of pain.   Third, Ms. Walden argues that the ALJ framed an incomplete hypothetical question to the vocational expert, which failed to take into account Ms. Walden's weakness, pain, and likelihood of missing work.  Finally, Ms. Walden advances two motions for remand.  The first motion seeks to remand this case to the ALJ to consider a questionnaire filled out by Phillip Rogers, a nurse practitioner who worked with Ms. Walden.  (Doc. 7.)  Ms. Walden's second motion attempts to remand her case to the Appeals Council to reconcile the instant case with a subsequent favorable decision from a second ALJ.  (Doc. 12.)

A.   Treating Physician's Opinion.

Ms. Walden contends that the ALJ improperly discredited her treating physician's opinion.  (Doc. 5.)  Specifically, Ms. Walden contends that the

ALJ failed to sufficiently explain his reasons for giving little weight to Dr. Sangmin Lee, one of her treating physicians.  (Doc. 5 at 21.)

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted).  The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source.  *See* 20 C.F.R. § 404.1527(d).  Furthermore, "good cause" exists for an ALJ to give less weight to a treating physician's opinion when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see*

*also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

Opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(e). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1546(c).

Dr. Sangmin Lee was one of several physicians at the Russell Clinic at UAB who evaluated Ms. Walden between May 21, 2008, and June 11, 2009. (Tr. at 243.) Dr. Lee twice suggested that Ms. Walden was disabled. On

April 20, 2009, he wrote a letter stating: "This is to inform you that Ms. Connie Walden is applying for charity care, and is unable to obtain employment due to her disability." (Tr. at 241.) This was the entire letter, and it contained no further information about the source or substance of Ms. Walden's disability. Dr. Lee also completed a questionnaire on July 23, 2009, diagnosing "moderately severe" chronic and continuous pain. (Tr. at 285.) He noted "severe pain in neck/arms" and contended that the limitations, pain, and side effects of Ms. Walden's medications would cause her to miss at least three days of work each month. (*Id.*)

Plaintiff suggests that the ALJ either failed to specify the weight given to Dr. Lee or failed to provide reasons for his decision. (Doc. 5 at 20.) However, the ALJ stated in the record that he gave Dr. Lee's opinion "little weight." (Tr. at 18.) The ALJ then gave two reasons for this finding, indicating that it was "inconsistent with the evidence of record as a whole" and inconsistent with Dr. Lee's own treating records. (*Id.*) These are both recognized by the Eleventh Circuit as "good cause" to discredit a treating physician. *See Phillips*, 357 F.3d at 1241.

Thus, the Court's inquiry continues to whether those reasons are supported by substantial evidence.  Plaintiff contends they are not.  (Doc. 5 at 21.)  The ALJ stated that he considered the entire medical record and found that Dr. Lee's opinion was inconsistent.  (Tr. at 18.)  A review of the record confirms that there is substantial evidence for the ALJ's finding.  On March 5, 2008, Ms. Walden was examined at Riverview Regional Medical Center.  Ms. Walden was "in mild distress" and obese, but there was "no visible external evidence" of chest trauma, no respiratory distress, and a normal cardiovascular test.  (Tr. at 196.)  Her psychiatric examination also found her "alert and oriented to person, place and time with normal affect."  (*Id.*)  Even though the hospital advised her to stay to monitor her heart condition after an abnormal EKG, Ms. Walden refused admission, citing a "sick relative at home requiring her care."  (*Id.*)  March 5, 2008, is the Plaintiff's alleged onset date.  (Doc. 5.)  Dr. Lee noted in his questionnaire that the severe symptoms he identified were present at least from this date.  (Tr. at 285.)  Yet, the medical evidence shows no indication of disability.

Subsequent examinations yielded similar results.  An April 2, 2008, examination by Dr. Narayan found largely normal results.  (Tr. at 218.)  Ms.

Walden had normal expansion of the chest, even respirations, and was oriented as to time, place, and person. (*Id.*) In May 2008, James Taylor of the Kirklin Clinic reviewed an echocardiogram and called it "essentially normal as is the stress MIBI." (Tr. at 233.) The ALJ referenced these results as reasons Dr. Lee's opinion was inconsistent with the body of the medical evidence. (Tr. at 18.)

Finally, the ALJ attached "great weight" to the State Agency RFC Assessment from April 29, 2008, and to the opinion of Dr. Gordon Mitchell, the State Agency Physician. (*Id.*) The RFC assessment was conducted by Winifred Hill on April 29, 2008. (Tr. at 230.) He found that Ms. Walden could occasionally lift 20 pounds, frequently lift 10 pounds, stand and walk for at least two hours in an eight-hour workday and sit for about six hours. (Tr. at 224.) She was restricted from balancing. (Tr. at 225.) She was also expected to avoid concentrated exposure to extreme cold, extreme heat, and hazards such as unprotected heights and dangerous machinery. (Tr. at 227.) Dr. Mitchell also found that Ms. Walden could stand for four hours. (Tr. at 222.)

Plaintiff contends that Dr. Lee's opinion is "uncontradicted" and "supported by medical records from the Russell Clinic."  (Doc. 5 at 22.) However, the ALJ examined these records and found that Dr. Lee's statements regarding disability were inconsistent both with the Russell Clinic and Dr. Lee's own findings.  Although Dr. Lee's examination in August 2008 revealed some problems with depression and chest heaviness with shortness of breath, those conditions subsequently improved.  (Tr. at 260.)  Dr. Lee's examination of Ms. Walden on October 21, 2008, described an improving patient instead of an increasingly disabled one.  Dr. Lee notes: "She no longer feels depressed, sleeps very well, and has enough energy.  Her anxiety symptoms have improved as well.  The patient complains of intermittent palpitations still and has some chest heaviness that has lessened since two months ago." (Tr. at 256.)   Thus, Ms. Walden had improved significantly since Dr. Lee saw her previously, and there is every indication that she had substantial energy and her symptoms were under control.  Dr. Lee also found that Ms. Walden's peptic ulcer disease was "stable." (Tr. at 256.)  A subsequent evaluation in June 2009 confirmed this improvement.  Dr. Lee referred to Ms. Walden's hypertension as "well-

controlled," found that no further action was required except for a follow-up in several months, noted that the depression symptoms remained well-controlled with Paxil, and found 5/5 strength in arms and legs. (Tr. at 247.) These two examinations indicate improvement and substantial strength, which are both consistent with the other evidence in the record and inconsistent with Dr. Lee's finding that she is disabled.

Ms. Walden was also examined by other physicians at the Russell clinic. (Doc. 5 at 21.) On March 26, 2009, Dr. Brittain Little examined Ms. Walden and found: "[S]he is doing quite well today. She still does have some chest tightness, but this is baseline for her and has been worked up in the past. Otherwise, she is very pleasant today and is very enjoyable to talk with." (Tr. at 250). Other than complaints of a poison ivy infection, she appeared to be doing well. (*Id.*)

Thus, the ALJ presented two valid reasons for good cause in discrediting the treating physician, and both of these reasons were supported by substantial evidence.

B.     Subjective Complaints of Pain.

Plaintiff next contends that the ALJ failed to articulate sufficient

reasons for discrediting Ms. Walden's subjective complaints of pain.  (Doc. 5.)  Plaintiff concedes that the ALJ acknowledged and rejected her testimony.  (Doc. 5 at 24.)  Plaintiff argues that the ALJ's reasons for rejecting her testimony are not supported by substantial evidence.  (Doc. 5 at 22.)

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).  To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons

for doing so.  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2003); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements.").  However, the Eleventh Circuit has "no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision."  *Dyer*, 395 F.3d at 1211.  Although "particular phrases or formulations" do not have to be cited in an ALJ's credibility determination, either, it cannot be a "broad rejection" which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole."  *Id.* at 1210 (internal quotations omitted).  The ALJ has the ability to weigh evidence, as "the resolution of conflicting evidence is for the Secretary and the administrative law judge, rather than for this Court."  *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984) (quoting *Allen v. Schweiker*, 642 F.2d 799, 801 (5th Cir. 1981)).

The ALJ stated that he considered the objective medical evidence when making his determination of Ms. Walden's credibility.  (Tr. at 17.)  The

ALJ noted that Ms. Walden's hypertension was well-controlled and her "diagnostic testing by echocardiogram and stress MIBI were unremarkable for any actue ischemic process." (*Id.*) This is consistent with the record. (Tr. at 233.)

The ALJ also evaluated the medical evidence in its entirety as it related to Ms. Walden's pain and the weight to be given to Dr. Lee's testimony. (Tr. at 18.) The evidence in the medical record belies Plaintiff's claims of severe pain. On March 5, 2008, the alleged onset date, Ms. Walden was only described as in "mild distress," and though there was concern about her heart, there was no indication of disability. (Tr. at 196.) In April, Dr. Narayan referenced only "occasional arm pain" and "heaviness" associated with her chest. (Tr. at 218.) Dr. Taylor identified "chest discomfort" along with shoulder pain. (Tr. at 235.) These early examinations may indicate some discomfort but are inconsistent with the extreme pain plaintiff alleged, pain often reaching an eight or nine out of ten. (Tr. at 34.) A claimant may endure some discomfort without meeting the pain standard set out by the regulations. *See Arnold*, 732 F.2d at 884.

Subsequent physicians found improvement and continued to describe

mild pain behaviors.  Dr. Little evaluated Ms. Walden in February 2009 and found some worsening arm pain which had led to a "mild decrease" in strength and some numbness.  (Tr. at 252.)  However, by March she was doing well, complaining only of an unrelated poison ivy infection and "chest tightness."  (Tr. at 250.)

The ALJ also considered other factors as part of examining the whole record.  Plaintiff contends these reasons are insufficient but fails to explain how.  (Doc. 5 at 24.)  The ALJ considered Ms. Walden's daily activities and found that they undermined Plaintiff's claims.  Ms. Walden did portions of the laundry, cooking, and dishes in her household.  (Tr. at 40.)  She managed her own finances.  (Tr. at 41.)  Although she claimed it would cause discomfort, she acknowledged that she could walk a city block and often drove her sister to the doctor.  (Tr. at 40-41.)  The ALJ cannot examine daily activities and from them alone find that a claimant is not disabled.  *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) (finding that "participation in everyday activities, such as housework or fishing" does not disqualify one from disability).  However, the ALJ must consider the entire record, including a claimant's activities, to make a

finding on credibility.  20 CFR § 404.1529(c)(3) ("Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities;. . . ."). Here, the daily activities testimony is extensive enough to corroborate the objective medical evidence.

The ALJ also considered Ms. Walden's failure to take her prescribed medications as part of his assessment.  Ms. Walden did not always have to take her pain medication, including on the morning of the hearing.  (Tr. at 45.)  Her physicians recommended that Ms. Walden take one half the dose of her medication to reduce drowsiness; there is no record that she complied with her physician's advice.  (Tr. at 18.)  The ALJ may deny benefits if the claimant cannot provide a good reason for failing to follow a physician's treatment advice that might restore the ability to work.  *Lucas v. Sullivan,* 918 F.2d 1567, 1571 (11th Cir. 1990).

Thus, the ALJ has cited no fewer than three valid reasons for discrediting claimant's subjective complaints of pain, which are supported in the record by substantial evidence.

C.    Vocational Expert Hypotheticals.

Plaintiff further contends that the ALJ's decision is not supported by

substantial evidence because the hypotheticals posed to the vocational expert ("VE") were incomplete.  (Doc. 5.)  Specifically, Plaintiff argues that the ALJ failed to include a hypothetical encompassing Ms. Walden's pain, weakness, and prospect of regularly missing work.  (Doc. 5 at 26.)  Plaintiff maintains that the ALJ erred by relying on an April 29, 2008, functional capacity evaluation conducted prior to Dr. Lee's opinions, and examinations from Russell Clinic.  (Doc. 5 at 25.)

In satisfying the fifth step of the sequential process, "[t]he ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (referencing *Allen v. Sullivan*, 880 F.2d 1200, 1201) (11th Cir. 1989)).  In so doing, "the ALJ may use Medical-Vocational Guidelines as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through a vocational expert's testimony, of [the] existence of jobs in the national economy that the claimant can perform."  *Id.* (citing *Wolfe v. Chater*, 86 F.3d 1072, 1077-78 (11th Cir. 1996)).  To satisfy the substantial evidence standard, "the ALJ must pose a hypothetical question

which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999).

The Eleventh Circuit has held that the Commissioner can disregard responses to hypotheticals not supported by the record. *Graham v. Bowen*, 790 F.2d 1572, 1576 (11th Cir. 1986).  An ALJ may also omit hypothetical questions which are not supported by medical records or are alleviated by medication. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (refusing to consider hypothetical because it was not raised at district court but noting, "In any event, the ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported"), *and Allen v. Barnhart*, 174 Fed. Appx. 497, 499 (favorably citing *Crawford*).  Furthermore, the ALJ must ask about claimant's impairments, but he need not ask about every symptom. *Ingram*, 496 F.3d 1253, 1270 (11th Cir. 2007).

During the hearing, the ALJ posed three hypothetical questions to the VE.  He relied on the State Residual Functional Capacity Assessment.  (Tr. at 49.)  His first hypothetical was based on "mild to moderate pain," and

the VE noted that based on claimant's age, education, and work experience, there would be sufficient jobs in the national economy for Ms. Walden.  (*Id.*) In his second hypothetical, the ALJ added a "sit/stand option," and the VE responded that this would not significantly reduce the available jobs.  (Tr. at 50.)  Finally, in the third hypothetical, the ALJ inquired of someone at "moderate" pain levels, and the VE responded that Ms. Walden would not be able to perform her past relevant work or other jobs in the national economy.  (*Id.*)  Ms. Walden's attorney then asked the VE about whether there would be available jobs if Ms. Walden had to miss three or more days per month from work due to drowsiness and pain.  (Tr. at 51.)  The VE answered that there would not be.  (*Id.*)

Plaintiff alleges that the ALJ's hypotheticals are incomplete because "Claimant's pain and her weakness were not mentioned and there was no mention of regularly missing work."  (Doc. 5 at 26.)  However, the hypothetical questions are complete.  The ALJ did inquire about Plaintiff's pain, including in his questions "mild to moderate pain" and "moderate" pain. (Tr. at 50.) Ms. Walden's attorney asked the vocational expert about whether there would be jobs if Ms. Walden had to miss three or more days

each month of work due to drowsiness from her medication and "severe" pain.  (Tr. at 50-51.)  Thus, the ALJ had an extensive record which considered pain, weakness, and her likelihood of missing work.  However, even if the ALJ did not reference weakness, it is not necessary for him to list every symptom in his questions.  *See Ingram*, 496 F.3d at 1270 (11th Cir. 2007) (finding that ALJ did not err by failing to include claimant's "fatigue, insomnia, anxiety, and depression in the hypothetical questioning").

Furthermore, it is irrelevant that the ALJ did not personally ask the questions about severe pain and her ability to miss work.  The ALJ did not find Dr. Lee's testimony credible, and he instead relied on Ms. Walden's RFC from 2008.  (Tr. at 17-18.)  An ALJ does not have to ask hypothetical questions regarding conditions or symptoms that he has properly discredited. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004); *see also May v. Comm'r of Soc. Sec.*, 226 Fed. Appx. 955, 960 (11th Cir. 2007) (citing *Crawford* favorably and noting that ALJ need not consider claimant's hypos based on discredited testimony), *and Gordon v. Astrue*, 249 Fed. Appx. 810, 813 (11th Cir. 2007) (citing *Crawford* favorably and also finding that ALJ's hypothetical questions based on "the medical evidence

and other evidence on the record that the ALJ found to be credible" was complete).  For reasons previously discussed, the ALJ properly discredited Dr. Lee's examinations and Ms. Walden's subjective complaints of pain.  The ALJ properly questioned the VE based on the functional limitations he found in the record.  (Tr. at 49-51.)

The ALJ is only required to base his hypothetical questions on those findings which have support in the record.  Here, the ALJ has done so, and his decision to discredit Dr. Lee's and Ms. Walden's testimony was properly supported by substantial evidence.  Reversal based on the hypotheticals is unwarranted.

D.    Motions to Remand.

Finally, Plaintiff moves this Court to remand her case to the Secretary to consider two additional pieces of evidence.  The first is a questionnaire from Phillip Rogers, a nurse at the Quality of Life Clinic, claiming that Ms. Walden suffered from a disability as of March 5, 2008.  (Doc. 7.)  The second is a subsequent opinion from a second ALJ determining that Ms. Walden was under a disability as of three days after the first ALJ's decision.  (Doc. 12.)

42 U.S.C. § 405(g) (2010) provides that this Court "may at any time

order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  This Court is not to examine new evidence not considered in the administrative proceedings, but instead "should remand a case to the Secretary to consider such evidence if a claimant makes a sufficient showing." *Caulder v. Bowen*, 791 F.2d 872, 876 (11th Cir. 1988) (citing *Cherry v. Heckler*, 760 F.2d 1186 (11th Cir. 1985)).  To make a statutory showing, "[t]he claimant must establish that: (1) there is new, noncumulative evidence; (2) the evidence is "material," that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level." *Id.* at 877.

To be "new", the proffered evidence must include evidence not contained in the administrative record.  *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988).  In other words, the "new" evidence must have been "unavailable" to the Commissioner either at the ALJ or Appeals Council level.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007).

Evidence can also be new and non-cumulative if it sheds additional light on an issue that was incompletely developed at the administrative level, such as a subsequent psychological evaluation. *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987).  Evidence is material if "there is a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).  A mere statement by the Commissioner that the new evidence would not ultimately change the outcome is insufficient. *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).  "Good cause" is satisfied when the evidence itself did not exist at the time of the administrative proceeding. *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988).

The motion to remand is a de novo issue. *Hyde v. Bowen*, 823 F.2d 456 (11th Cir. 1987).  However, "a remand request should be denied if it is simply a delaying tactic." *Caulder*, 791 F.2d at 876.

### 1.   Questionnaire.

Plaintiff claims the ALJ should review an additional questionnaire from Phillip Rogers, a nurse who treated the plaintiff at the Quality of Life Clinic. (Doc. 7.)  Here, the Commissioner does not appear to contest that the

information is "new," but does argue that the information is both immaterial and made without good cause.  (Doc. 8.)

The questionnaire largely satisfies the Eleventh Circuit standard for being "new and non-cumulative," but several questions are not "new".  For instance, the questionnaire asks what medications Mr. Rogers or Quality of Life has prescribed. (Doc. 7 at 4.)  These three medications—Lisinopril, Amitriptyline, and Nexium—are all found in the existing Quality of Life medical report along with additional medications.  (Tr. at 213.)  The questionnaire also asks about the impairments which cause the claimant to be disabled.  (Doc. 7 at 3.)  The fact that Quality of Life found that Ms. Walden suffered from hypertension is also present in the record.  (*Id*. at 199-200, 202-204.)  However, Mr. Rogers concludes in his questionnaire that Ms. Walden is disabled, the onset date was March 5, 2008, and he expects the disability to continue for her life. (Doc. 7 at 3.) He cites impairments causing the disability as mitral valve prolapse, hypertension, depression, iron deficiency, and anemia. (*Id*.)  Mr. Rogers' opinion is new in that it was not included in the administrative record.  *See Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988).

Ms. Walden also can show good cause under the Eleventh Circuit's standard.  The questionnaire was completed October 26, 2010, and its non-existence during the administrative process is sufficient to establish good cause.  *See Cherry v. Heckler*, 760 F.2d 1186, 1192 (11th Cir. 1985) (citing *Burton v. Heckler*, 724 F.2d 1415, 1418 (9th Cir. 1984)). This Circuit has not inquired into whether the evidence should have been obtained at an earlier time but has instead emphasized the requirement as an attempt to bar bad-faith manipulation of the administrative process.  *See Milano v. Bowen*, 809 F.2d 763, 767 (11th Cir. 1987); *see also Archer v. Comm'r of Soc. Sec.*, 176 Fed. Appx. 80 (11th Cir. 2006).

Regardless, this questionnaire is immaterial, and thus, remand would be inappropriate.  The opinions expressed about the impairments are immaterial because a certified nurse practitioner is not a source who can provide evidence to establish an impairment.  *See* 20 C.F.R. §§ 404.1513(a), 416.913(a).  Instead, a nurse practitioner's opinion is only relevant as to the severity of a particular impairment.  *See* 20 C.F.R. §§ 404.1513(d)(1), 404.913(d)(1).  Thus, Mr. Rogers was not qualified to diagnose Ms. Walden with the impairments of mitral valve prolapse, hypertension, depression,

iron deficiency, or anemia.  (Doc. 7 at 3.)

When considered for severity, Mr. Rogers' information is also immaterial.  Rogers states that Ms. Walden is disabled, but he does not provide any pertinent information regarding how he arrives at this conclusion.  His only elaboration is in response to a question seeking additional information in which he states, "She has had a problem with depression for a while.  Her medications have helped.  She has been refferred [sic] to a psychiatrist." (Doc. 7 at 4.)  There are several problems with his pronouncement.  First, Mr. Rogers is not qualified to diagnose an impairment of depression.  Second, Mr. Rogers' description is vague at best and could suggest that she had controlled her depression.  More importantly, Mr. Rogers' analysis provides no description of severity that would warrant further consideration.

Ultimately, Mr. Rogers' response to the questionnaire fails to provide any information to support a remand.  Instead, it is a conclusion without substance or support which is of the type commonly discredited by ALJs and upheld on appeal.   It is for this reason that the Eleventh Circuit has limited grants of remand.  *See Caulder v. Bowen*, 791 F.2d 872, 876 (11th Cir. 1986)

("We agree with the Fifth Circuit's observation that 'not every discovery of new evidence, even if relevant and probative, will justify a remand to the Secretary, for some evidence is of limited value and insufficient to justify the administrative costs and delay of a new hearing'").  In this instance, the value of this questionnaire is so remote that it cannot justify the expense and burden of another administrative hearing.

> 2.  Subsequent ALJ Opinion.

Plaintiff also wants the Appeals Council to consider a subsequent ALJ opinion that found she was disabled for a period beginning three days after the decision at issue in this case.  (Doc. 12.)  The Commissioner argues that the second opinion is immaterial.  (Doc. 13.)

Plaintiff cites in support of her motion a case, wherein the Ninth Circuit affirmed a district court remand to consider a subsequent favorable decision.  *See Luna v. Astrue*, 623 F.3d 1032 (9th Cir. 2010).  However, the Eleventh Circuit has not directly addressed this question.  The Eleventh Circuit has suggested that ALJ opinions are to be read separately when they cover different periods of time.  *See Cassidy v. Commissioner*, 383 Fed. Appx. 840 (11th Cir. 2010) (holding that 2006 denial of benefits was

supported by substantial evidence and did not have to be reversed after a subsequent application for benefits was granted in 2008).

Though much of the medical evidence is similar between these two cases, this is not enough.  *See Id.* ("Even assuming [claimant's] underlying medical conditions were the same, the determination of [claimant's] disability was based not just on his medical conditions, but on how those conditions affected his residual functional capacity to perform work").  In the decision at issue in this case, the ALJ gave some weight to Dr. Mitchell, the State Agency Physician.  (Tr. at 18.)  The ALJ also gave great weight to the RFC Assessment from April 29, 2008.  (*Id.*)  The second ALJ clearly considered a different RFC assessment because it references Dr. Robert Heilpern, a different State consultant.  (Doc. 12 at 12.)  These different considerations of functional capacity are important, and the distinction is clear on the face of the opinions.  It is also clear that these evidentiary differences altered the amount of weight given to Dr. Sangmin Lee's assessment.  Dr. Lee's opinion is given "little weight" in the first ALJ opinion.  (Tr. at 18.)  In the second opinion, the ALJ notes, "[O]pinions contained in Dr. Lee's questionnaire are not entirely supported by his

treatment notes, nor the evidence of record.   That being said, the undersigned, giving the claimant the benefit of the doubt finds that the claimant's pain and functional limitations [a]ffect her ability to persistently function eight hours a day forty hours a week."  (Doc. 12 at 12.)  Neither ALJ seems to find Dr. Lee completely credible, but the second ALJ had the support of different physical assessments and decided to give Plaintiff "the benefit of the doubt."  Thus, even if the Eleventh Circuit applied the Ninth Circuit standard, the subsequent ALJ opinion does not justify remand.  *See Luna v. Astrue*, 623 F.3d 1032 (9th Cir. 2010) ("Although we have previously upheld the denial of a remand for further proceedings in somewhat similar circumstances, it was in a case where an initial denial and subsequent award were easily reconcilable on the record before the court.").  In fact, the Ninth Circuit refused to remand a case that involved "different medical evidence, a different time period, and a different age classification." *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001).  The ALJ's decision at issue in this appeal is supported by substantial evidence and covers a different time period with different medical evidence; therefore, remand is inappropriate.

Plaintiff also supports her argument for remand with a citation to the Hearings, Appeals, and Litigation Manual ("HALLEX").  Although Plaintiff is unclear about which section(s) of HALLEX purportedly require remand, she references two cases from other circuits that conclude HALLEX requires the Appeals Council to review subsequent ALJ opinions.  (Doc. 12 at 2-3). HALLEX does say, "[I]f the subsequent claim is allowed while the prior claim is pending in court or the court remands the prior claim, the Appeals Council (AC) must determine the effect, if any, of such action on the other claim." HALLEX I-4-2-101, Section I.A.

However, there are two problems with Plaintiff's reliance on HALLEX. First, the Eleventh Circuit has not decided that HALLEX carries any force of law.  It has only stated that assuming it does would be a "very big assumption." *George v. Astrue*, 338 Fed. Appx.  803, 805 (11th Cir. 2009). Second, the HALLEX provision seems at odds with the very nature of ALJ determinations in Social Security proceedings.  The Eleventh Circuit has treated ALJ opinions as adjudications on specific periods of time with specific evidence, in which case there is no need for the Appeals Council to consider inconsistencies.  *See Wilson v. Apfel*, 179 F.3d 1276 (rejecting

claimant's attempt to introduce new medical evidence after the trial because the court reviews "as to whether the claimant was entitled to benefits during a specific period of time") (emphasis added).  In this case, the time periods are different, the residual functional capacity determinations are different, and there is no necessary inconsistency. Furthermore, in a case such as this one, with different evidence on functional capacity, the expense of evaluating these two opinions is unwarranted.

IV.    Conclusion.

Upon review of the administrative record, and considering all of Ms. Walden's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 6th day of September 2011.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
167458